# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |
|---|---|
| JONATHAN STAUFENBIEL, | ) |
| Plaintiff, | ) No. 4:13-CV-2571-JAR |
| v. | ) |
| AMICA MUTUAL INSURANCE COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Amica Mutual Insurance Company's ("Amica") Motion for Summary Judgment (Doc. 20). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be **GRANTED, in part.**

## I. BACKGROUND

The Parties do not dispute the following facts.[1] On February 23, 2013, Plaintiff John Staufenbiel ("Plaintiff") was struck by a vehicle driven by Jennifer Raftery ("Raftery") while he was walking along highway Route T in St. Charles, Missouri. Raftery carried an insurance policy which offered coverage of $100,000 per person and $300,000 per accident. Plaintiff recovered the full $100,000 policy limit. This action arises as a result of Plaintiff's claims that Raftery was underinsured. At the time of the accident, Plaintiff was an additional insured on an auto insurance policy issued to Plaintiff's parents by Amica, Policy No. 940224-20HB (the "Policy"). The Policy provided underinsured motor ("UIM") vehicle coverage for four separate

---

[1] *See* Amica's Statement of Uncontroverted Material Facts (Doc. 22) and Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts (Doc. 28).

automobiles each with limits of $100,000 per person and $300,000 per accident. Plaintiff made a demand on Amica for payment of $400,000, the sum of the four policy limits. Amica declined to make payment and Plaintiff brought this action for Breach of Contract (Count I) and Bad Faith/Vexatious Refusal (Count II).

Amica has now moved for summary judgment (Doc. 20). Amica asserts that Plaintiff is not entitled to recover $400,000 because clear and unambiguous policy language prohibits the stacking of policy limits. Amica also argues that Plaintiff does not qualify for coverage under the Policy because clear and unambiguous policy language prohibits duplicate recovery of amounts already recovered from the underlying tortfeasor. Additionally, Amica asserts that Plaintiff is not entitled to recover under the Policy because he failed to comply with and breached the Policy. Finally, regarding Count II, Amica argues that Plaintiff never made a pre-suit demand that fell within the applicable policy limit.

The relevant provisions of the Policy's Underinsured Motorists Coverage Endorsement (Doc. 22-1 at 31-33) read as follows:

**UNDERINSURED MOTORISTS COVERAGE-MISSOURI**

**INSURING AGREEMENT**
A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1. Sustained by an insured; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership maintenance or use of the underinsured motor vehicle.

We will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:

  a. Have been given prompt written notice of such tentative settlement; and
  b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

***

C. **"Underinsured motor vehicle"** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for bodily injury under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages.

***

## LIMIT OF LIABILITY

A. The Limit of Liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the Limit of Liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists coverage is our maximum Limit of Liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

  1. Insureds;
  2. Claims made;
  3. Vehicles or premiums shown in the Schedule or in the Declarations; or
  4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

The Policy also contains the following additional, relevant provisions:

### PART E- DUTIES AFTER AN ACCIDENT OR LOSS
We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

***

B. A person seeking any coverage must:

  1. Cooperate with us in the investigation, settlement or defense of any of claim or suit.

> 2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
>
> 3. Submit, as often as we reasonably require:
> > a. To physical exams by physicians we select. We will pay for these exams.
> > b. To examination under oath and subscribe the same.
>
> 4. Authorize us to obtain:
> > a. Medical reports; and
> > b. Other pertinent records.

(*Id.* at 24-25).

\*\*\*

> **PART F- GENERAL PROVISIONS**
> **Legal Action Against Us**
> A.     No legal action may be brought against us until there has been full compliance with all the terms of this policy.
>
> **TWO OR MORE AUTO POLICIES**
> If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

(*Id.* at 25, 27).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or establish "that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. DISCUSSION

#### A. Choice of Law

District courts, whether sitting in diversity or deciding supplemental state law claims, are required to use the choice-of-law rules for the state in which it sits. *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006); *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008). The Parties agree that Missouri law applies. Therefore no choice of law analysis is necessary.

#### B. Count I: Breach of Contract

It is well settled the interpretation of an insurance policy is a question of law. *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 728 (8th Cir. 2011) (citing *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)). Applying the rules of construction is unnecessary when a provision is clear as written, unless a statute or public policy dictates otherwise. *Council Tower Ass'n*, 630 F.3d at 728 (citing *Cincinnati Ins. Co. v. Bluewood, Inc.*, 560 F.3d 798, 802 (8th Cir. 2009)). Where language used in an insurance contract is unambiguous, all terms are given their plain, ordinary, and usual meaning. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo. Ct. App. 1988); *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand." *Shahan*, 988 S.W.2d at 535.

##### 1. Stacking

The Court must first address Amica's argument that Plaintiff cannot recover a stacked total of $400,000 in coverage under the Policy. " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple

-5-

coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Ritchie v. Allies Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2007) (en banc) (quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999)). As underinsured motorist coverage is not required in this state, "the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer." *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. 1991) (en banc). This means that if the policy language is unambiguous in disallowing stacking, the anti-stacking provisions are enforceable. *Seeck*, 212 S.W.3d at 132. "If, however, policy language is ambiguous [as to stacking], it must be construed against the insurer," and stacking will be allowed. *Id.* (internal quotation omitted). *See also Midwestern Indem. Co. v. Brooks*, No. 14-2016, 2015 WL 855680, at *3 (8th Cir. Mar. 2, 2015) ("[T]he 'key' question is whether the policy unambiguously prohibits stacking *or* is reasonably open to different constructions as to the permissibility of stacking.") (emphasis in original) (internal quotation omitted).

The Policy unambiguously prohibits stacking of underinsured benefits. The Insuring Agreement on the UIM Coverage Endorsement, found in Section A, page one of the Underinsured Motorist Coverage-Missouri, clearly indicates that Amica "will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury" (Doc. 22-1 at 31). This amount is expressly limited on the next page by the Limit of Liability provision. The provision reads, in relevant part:

> The Limit of Liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages . . . .
>
> This is the most we will pay regardless of the number of:

3. Vehicles or premiums shown in the Schedule or in the Declarations

(*Id.* at 32). The Missouri courts have found similar policy language unambiguous. *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 609-610 (Mo. Ct. App. 2012). *See also Midwestern Indem. Co.*, 2015 WL 855680, at *3 (finding comparable anti-stacking language unambiguous).

"Although this anti-stacking limitation is unambiguous, . . . if a policy has clauses that claim to prohibit stacking and also contains clauses that appear to authorize stacking, coverage is ambiguous and must be resolved in favor of the insured." *Id.* at *4 (internal quotation omitted). Plaintiff argues that the language of the Policy contains ambiguities as it pertains to stacking of insurance policies because the Limit of Liability provision and Section A, Page one of the Underinsured Motorists Coverage-Missouri conflict. Specifically, Plaintiff asserts that Insuring Agreement gives the insured a right to recover by promising to compensate for what the insured is legally entitled to recover while the Limit of Liability takes that right away by limiting the recoverable amount. Relying on *Chamness*, Plaintiff argues that an ambiguity exists in an insurance policy when one portion of the policy promises a benefit and another portion takes that benefit away. *Chamness v. Am. Fam. Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo. Ct. App. 2007). Plaintiff also asserts that the Declarations Page further confuses the matter because it states that UIM is covered for each vehicle (*See* Doc. 22-1 at 11).

However, limits of liability are common in any insurance plan regardless of policy type and do not create a conflict with the grant of insurance. *Midwestern Indem. Co.*, 2015 WL 855680, at *4 ("In Missouri, a policy is not ambiguous just because its broad statement of coverage is later cabined by policy definitions or exclusions."). Further, the case Plaintiff relies upon, *Chamness,* deals specifically with those situations in which an individual is harmed while occupying a non-owned vehicle and the "other insurance clause appears to provide coverage but

other clauses indicate that such coverage is not provided." *Chamness*, 226 S.W.3d at 204. The Missouri Court of Appeals found that such a conflict created an ambiguity and therefore the Court of Appeals allowed plaintiff to stack the underinsured motorist coverage under three separate motor vehicles. The Parties raise no such dispute here. Finally, the Court finds that the declaration page does not confuse the matter – a reasonable layperson would understand the table to indicate that while driving one of the listed vehicles, the individual was covered by the underinsured motorist coverage. Nothing in the chart addresses or contradicts the anti-stacking provision. *See Midwestern Indem. Co.*, 2015 WL 855680, at *4, n.4 ("Missouri Supreme Court precedent shows a reader cannot rely on a declarations page to outline the precise scope of coverage.") In sum, the Policy does not permit Plaintiff to stack the underinsured motorist coverage limits for his four vehicles; as such, the applicable policy limit is $100,000.

### 2. Offset Provision

Amica argues that duplicate recovery is not permitted under the unambiguous terms of the Policy and therefore it is entitled to offset the liability limits. An offset provision is one which reduces the limit of liability by the amount paid by or on behalf of an individual who may be legally responsible for the accident. *See, e.g., Rodriguez*, 808 S.W.2d at 381 (The offset provision provided, "However, the *limit of liability* shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible") (emphasis added). The effect would therefore be a reduction in the limit of liability, the amount the insured could potentially recover from the insurer, by the previously recovered amount. The provision at issue in this case, however, is not an offset provision; it is an unambiguous prohibition of duplicate recovery. It instead reads, in relevant part,

C.  We will not make a *duplicate payment* under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

(Doc. 22-1 at 32) (emphasis added).

While Plaintiff asserts that the Policy, specifically this provision, is ambiguous because the term "duplicate payment" could mean either that an insured cannot receive payments under two separate polices or that the insured cannot receive payments through a collection of different policies or endorsement that exceed the amount of the judgment to which he is entitled (Doc. 27 at 2-3), when Subpart C is read in the context of the entire Limit of Liability Provision, its plain meaning is clear. Subpart A, as already indicated by the Court, prohibits the stacking of the UIM coverage, Subpart B prohibits duplicate recovery for the same items of loss under the different policy coverages, and Subpart C prohibits duplicate payment for an element of loss already made by or on behalf of a person who is legally responsible for the loss, in this case the driver's insurance. The language of Subpart C, taken in conjunction with the grant of insurance,[2] "'simply means that in determining the total damages to which the underinsured motorist coverage will be applied, the amount of money already received from the tortfeasor must be deducted. In this way, it avoids double recovery.'" *Ritchie*, 307 S.W.3d at 141 (citing *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 693 (Mo. 2009) (en banc)). It is undisputed that Plaintiff recovered $100,000 from the driver's insurance. Therefore, Plaintiff is only entitled to recover under the Policy if his damages exceed $100,000.

Plaintiff alleges that he has over $500,000 in damages and is accordingly entitled to recover under the Policy. In support of this figure, Plaintiff indicates that this amount includes

---

[2] "We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of a bodily injury . . ." (Doc. 22-1 at 31).

the $100,000 previously recovered and directs the Court's attention to Amica's Exhibit B, a letter dated August 2, 2013, in which Plaintiff seeks the stacked policy limit of $400,000 from Amica for the accident (Doc. 22-2). Attached to the letter is a spreadsheet of then-current medical expenses totaling $70,939.03 (*Id.* at 13-15). Amica asserts that because some of this treatment resulted from unrelated incidents and Plaintiff has not provided any additional invoices or records evidencing supplementary medical care or expenses, Plaintiff is unable to establish sufficient evidence of non-duplicative compensatory damages that would enable a jury to return a verdict for him. Given the listed medical expenses, the nature of the injuries and the allegations of future medical expense, pain and suffering, lost wages, and lost earning capacity, the Court finds that there is sufficient evidence in the record that a reasonable jury could find Plaintiff has suffered damages in excess of $100,000.

### 3. Cooperation and Legal Action Clauses

Amica also asserts that Plaintiff is not entitled to coverage because Amica suffered prejudice when Plaintiff failed to comply with the Policy. Specifically, Amica argues that Plaintiff did not submit to an examination under oath or provide complete documentation concerning his medical treatment or damages, and then brought suit before there was full compliance with the terms of the policy. Plaintiff responds denying this allegation and detailing multiple instances of cooperation (Doc. 27 at 8-9). In support of his assertions, Plaintiff has provided the Court with communications between Plaintiff's counsel and Amica and its counsel (*See infra*). Plaintiff does not assert that the relevant provisions are ambiguous.

Under Missouri law, to deny coverage under a cooperation clause, an insurer must prove (1) a material breach of the cooperation clause, (2) the existence of substantial prejudice as a result of the breach and (3) the exercise of reasonable diligence to secure the insured's

cooperation. *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1051 (8th Cir. 2010). The Policy provides in relevant part that Amica has "no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us" (Doc. 22-1 at 24). Those duties include an authorization for Amica to obtain medical and other pertinent reports and submission to an examination under oath (*Id.* at 24-25). The Policy also includes a legal action clause that states, "No legal action may be brought against us until there has been full compliance with all the terms of this policy" (*Id.* at 25).

The Court finds that there is sufficient evidence that a reasonable jury could find Plaintiff did not materially breach the cooperation clause. The evidence in the record indicates that Plaintiff attempted to schedule his examination under oath and to supply his medical and other records. Plaintiff has provided the Court with correspondence indicating he attempted to schedule the examination under oath (Docs. 27-9, 27-10, & 27-11). Plaintiff's counsel represents that initially Plaintiff was not capable of giving a statement (Doc. 27-8) and that, after the filing of this litigation, neither Amica nor its counsel addressed whether an examination under oath was still needed or provided any dates (Doc. 27 at 9). Further, the exhibits submitted by Plaintiff indicate that counsel provided the then-current medical records to Plaintiff (Docs. 22-2, 27-5, 27-6), photographs of the vehicle (Doc. 27-4), several photographs of Plaintiff's injuries (Docs. 27-4), a photograph of the scene (Doc. 27-6), a marked google map indicating the location of the accident (Doc. 27-7) and responded to questions (*See* Doc. 27-6). There is not any indication that Amica made requests for additional information that was not provided by Plaintiff. *Med. Protective Co.*, 594 F.3d at 1053. Therefore, the Court finds that there remains an issue of material fact regarding whether Plaintiff materially breached the cooperation clause of the Policy. As such, a reasonably jury could also find that Plaintiff did not breach the legal action clause. *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 30 (Mo. 1969) (finding substantial

compliance a policy's notice clause sufficient to overcome its legal action clause). *See also Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 10 (Mo. 1995) (en banc).

## C. Count II: Bad Faith/Vexatious Refusal

Amica next asserts that Plaintiff's vexatious refusal claim must fail as there is no evidence of recalcitrance and there was no pre-suit demand that fell within policy limits. Plaintiff responds that if the Court finds Plaintiff's arguments concerning the ambiguities of the offset and anti-stacking language, then the Court should allow the vexatious refusal claim to go forward (Doc. 27 at 7).

Under Missouri law, Plaintiff must establish that (1) he had an insurance policy with Amica, (2) Amica refused to pay, and (2) Amica's refusal was without reasonable cause or excuse. MO. REV. STAT. § 375.420 (2014); *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006). *See also De Witt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984) ("To support the imposition of the penalty under the statute, plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person.") "There is no vexatious refusal when the insurer has reasonable cause to believe and does believe there is no liability under its policy and that it has a meritorious defense." *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 649 F.3d 661, 674 (8th Cir. 2011) (citing *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998)). "The existence of a litigable issue will not preclude a penalty, however, if the insurance company's attitude is show to be vexatious and recalcitrant." *Watters v. Travel Guard Intern.*, 136 S.W.3d 100, 109 (Mo. Ct. App. 2004). "This determination must be made by viewing the facts as they appeared at the time of the refusal to pay." *State Farm Mut. Auto. Ins. Co. v. Shahan*, 141 F.3d 819, 824 (8th Cir. 1998).

As previously discussed, the Court determined the anti-stacking language to be unambiguous and the applicable UIM coverage limit to be $100,000. Plaintiff's pre-suit demands were always for $400,000. No demand was ever made within or at the $100,000 policy limit. Therefore, the Court finds Amica's denial of Plaintiff's demand of $400,000 to settle the claim not unreasonable and that Amica is entitled to judgment as a matter of law.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Amica Mutual Insurance Company's Motion for Summary Judgment (Doc. 20) is **GRANTED, in part.** Count II is hereby **DISMISSED with prejudice.**

Dated this 30th day of March, 2015.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE